E-FILED
Wednesday, 30 September, 2026 02:25:11 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **HOMA KHOSRAVIAN, an individual,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-cv-2243** |
| | ) | |
| **BOARD OF TRUSTEES OF THE** | ) | |
| **UNIVERSITY OF ILLINOIS,** | ) | |
| **Defendant.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Plaintiff Homa Khosravian alleges Defendant discriminated against her on the basis of sex and retaliated against her for engaging in protected activity in violation of Title IX, 20 U.S.C. § 1681 *et seq.*, resulting in loss of education opportunities, loss of funding pathways, and termination from her Ph.D. program. (Doc. 13). For the reasons that follow, Defendant Board of Trustees of the University of Illinois' Motion to Dismiss is denied. (Doc. 14).

## I. INTRODUCTION

Defendant contends some of the allegations in support of her claims fall outside the two-year statute of limitations. (Doc. 15). Defendant also asserts Count I must be dismissed because Plaintiff has not plausibly alleged Defendant directly discriminated against her or was deliberately indifferent to Plaintiff's harassment. According to Defendant, Plaintiff's retaliation claim fails because she cannot show she engaged in protected activity and, even if she could meet that element, Plaintiff cannot demonstrate

a but-for causal connection between the protected conduct and any adverse action. (*Id.* at 13-15).

## II. FACTUAL ALLEGATIONS[1]

At all relevant times, Plaintiff was enrolled as an adult graduate student at the University of Illinois within the Siebel School of Computing and Data Science. Defendant knew Plaintiff was a mother of young children and served as their primary caregiver. (Doc. 13, ¶ 4).

Nancy M. Amato is Director of the Siebel School of Computing and Data Science within the Grainger College of Engineering at the University. Professor Amato was the faculty advisor to Plaintiff and Diane Uwacu, another graduate student. (*Id.* at ¶ 6). On February 24, 2022, Plaintiff notified University officials and/or program leadership that Diane Uwacu intended to use Plaintiff's work in a research paper without authorization or attribution. (*Id.* at ¶ 7). Plaintiff's complaint was ignored and the work was submitted and published in October 2022. (*Id.* at ¶¶ 8, 10). Plaintiff alleges that *Figure 3(c)* and associated algorithmic work in Uwacu, Yammanuru, Morales, & Amato (2022), "Hierarchical Planning with Annotated Skeleton Guidance," IEEE Robotics and Automation Letters, 7(4), 11055-11061, reflected Plaintiff's work and was used without her consent or proper attribution. (*Id.* at ¶ 9).

After raising her concerns, Plaintiff alleges Professor Amato paused and/or withheld meetings related to Plaintiff's research papers, withdrew research support, and

[1] Because this matter is before the Court on a motion to dismiss, these allegations are taken from Plaintiff's Amended Complaint. (Doc. 13).

impeded Plaintiff's publication progress, while other students continued to receive support. (*Id.* at ¶ 11). Plaintiff was also removed from a computational biology research group under Professor Amato's supervision without academic justification, while Diane Uwacu continued to receive support results during the same period. (*Id.* at ¶ 12). Plaintiff sought departmental support to attend a women-focused graduate conference intended for early-stage Ph.D. students. Professor Amato declined to support Plaintiff's attendance while supporting Uwacu's participation four times beyond the initial eligibility period. (*Id.* at ¶ 13).

Plaintiff alleges that following a qualifying exam, she received comments that were materially inaccurate and incorrect. (*Id.* at ¶ 14). On November 8, 2022, Plaintiff emailed Nan Jiang, chair of her qualifying exam committee, requesting clarification regarding the inaccurate or incorrect comments. (*Id.* at ¶ 15). Jiang refused to respond and directed Plaintiff to address the matter with Professor Amato, even though Amato was not present during the qualifying exam. (*Id.* at ¶ 16). On November 10, 2022, Professor Amato told Plaintiff she had no right to ask questions of the qualifying exam committee and was required to apologize for requesting clarification. (*Id.* at ¶ 17). Plaintiff alleges a white male student ("Student A") was allowed to ask questions regarding his qualifying exam without being punished. (*Id.* at ¶ 18). Plaintiff requested to appeal but Professor Amato prohibited her from filing an appeal and denied her access to any formal appeals process for the examination. (*Id.* at ¶ 19).

Plaintiff took another qualifying exam on or about April 5, 2023. (*Id.* at ¶ 20). During the qualifying exam process and related interactions, Plaintiff was asked

questions unrelated to academic performance, including questions about her age and why she wanted the degree, and was advised that she already had "enough" with her prior degree. (*Id.* at ¶ 21). On or about April 11, 2023, Plaintiff was informed that she could not continue in or pursue the Ph.D. program because she did not pass the second qualifying exam. Plaintiff alleges this determination violated the procedures set forth in the University's Graduate College Handbook governing qualifying examinations and continuation in the Ph.D. program. (*Id.* at ¶ 22).

On or about April 13-14, 2023, Plaintiff communicated with the CS Director of Graduate Studies regarding the qualifying exam process. Plaintiff was told that the committee felt "insulted" by Plaintiff's prior email requesting clarification. (*Id.* at ¶ 23). During this communication, the CS Director of Graduate Studies told Plaintiff that she should apologize to the chair of the qualifying exam committee because he was a "young male Assistant Professor" and had "lost his confidence when a female student questioned his responses to her exam." (*Id.* at ¶ 24). Plaintiff was never informed that requesting clarification regarding qualifying examination feedback violated any written or unwritten program rule. Despite repeated communications with individuals who possessed authority to intervene or provide corrective process, Plaintiff alleges she received no meaningful explanation of her examination results and was denied any fair or transparent review or appeal mechanism. (*Id.* at ¶ 25).

On September 7, 2023, Plaintiff's attorney contacted the University regarding Plaintiff's treatment, academic standing, and procedural rights. (*Id.* at ¶ 26). On October 10, 2023, Plaintiff was informed that to appeal and/or pursue a third attempt she would

need a letter of support from Professor Amato by October 30, 2023. (*Id.* at ¶ 27). Plaintiff alleges this requirement functioned as an unreasonable gatekeeping barrier because Professor Amato was the subject of Plaintiff's complaints and had taken adverse actions affecting Plaintiff's academic progress. (*Id.* at ¶ 28). On November 9, 2023, Plaintiff was informed the department rejected her appeal, stating it was submitted "well after" Plaintiff took the second qualifying exam. (*Id.* at ¶ 29). Plaintiff alleges the department had prevented her from appealing earlier despite her requests and then relied on that circumstance to deny relief. (*Id.* at ¶ 30). During this period, Plaintiff was treated as ineligible for funding, resulting in significant financial hardship, despite having held a valid funding contract, remained in eligible academic standing at the time, and the funds were available, as confirmed in an email from Professor Amato. (*Id.* at ¶ 31).

On December 20, 2023, the Graduate College placed Plaintiff on probation with conditions including a deadline of April 15, 2024, related to advisor arrangements and registering for the qualifying exam cycle. (*Id.* at ¶ 32). Plaintiff alleges the qualifying exam registration was not open during the period necessary to meet the April 15, 2024 probation deadline and opened only after business hours on April 15, making compliance impossible. (*Id.* at ¶ 33). Plaintiff notified the Graduate College of this contradiction prior to termination but received no corrective action. (*Id.* at ¶ 34). On April 16, 2024, Professor Kris Hauser told Plaintiff, in substance, that the program was not for her and that she would fail regardless, stating words to the effect of: "You have been given every warning signal possible that this program is not for you." (*Id.* at ¶ 35). Plaintiff further alleges that, during a robotics course, Professor Hauser stated to the class that he was a member of

The Satanic Temple and advised that any student offended by his views should drop the course. This statement contributed to a hostile educational environment for her as a Muslim student and further contributed to Professor Hauser's conduct in connection with her qualifying examination and its outcome. (*Id.* at ¶ 36). On April 19, 2024, Plaintiff again documented the probation contradictions, funding denials, and bias concerns to the Graduate College and departmental leadership. (*Id.* at ¶ 37). On May 17, 2024, Plaintiff was dropped from the program and prohibited from registration citing failure to satisfy the April 15 probation terms. (*Id.* at ¶ 38).

Plaintiff alleges a white female student ("Student B") from Professor Amato's lab had a co-author serve on her qualifying exam committee while presenting co-authored work, reflecting inconsistent enforcement of conflict-of-interest norms. (*Id.* at ¶ 39). Program leadership stated, in substance, that the qualifying exam was the "last chance" to remove students from the program "with no consequence." (*Id.* at ¶ 40).

Plaintiff alleges Diane Uwacu was permitted to attend The Computing Research Association's Committee on Widening Participation Grad Cohort Workshop on four occasions, despite the workshop's stated policy prioritizing first-time attendees and new graduate students, thereby deviating from the program's articulated selection criteria. (*Id.* at 41). Plaintiff applied during her eligibility period but was denied attendance. Plaintiff alleges she raised this disparity to senior DEI leadership and no investigation occurred. (*Id.* at ¶ 42).

Plaintiff alleges she was forced out of her office space under a rule not applied to other students, despite the University's knowledge that her children were hospitalized.

(*Id.* at ¶ 43). Plaintiff alleges her research work was published by others despite acknowledgement in written email communications by Defendant that the work originated from Plaintiff, while stating that other students were given priority over Plaintiff. (*Id.* at ¶ 45). Professor Amato explicitly referenced Diane Uwacu's race on multiple occasions as a reason for providing her support and advancement. (*Id.* at ¶ 46). Plaintiff claims, as a result of Defendant's conduct, Plaintiff suffered a loss of funding pathways and financial hardship, loss of educational and professional opportunities, reputational harm, and termination of her ability to continue in the Ph.D. program. (*Id.* at ¶ 47).

## III. DISCUSSION

Defendant contends that at least five allegations of sex-based discrimination and/or retaliation occurring between February 24, 2022, and September 7, 2023, are untimely and should not be considered as support for her claims. Defendant further asserts Plaintiff's Title IX discrimination claims are not actionable under a direct discrimination theory or a deliberate indifference theory. Defendant also contends Plaintiff's allegations are insufficient to allege a Title IX retaliation claim.

In response, Plaintiff alleges the continuing violation theory saves any otherwise untimely claims and, even if the Court disagrees, such allegations should be considered as background. Plaintiff further contends Title IX sex discrimination and retaliation are plausibly pled in Count I and Count II.

**A. Legal Standard**

A plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means providing the defendant with "fair notice" of what it must defend itself against and whether there is some reason to believe it ultimately could be found liable. *Williams v. Dart*, 867 F.3d 625, 638 (7th Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when . . . [it] pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Timeliness of Certain Allegations**

Plaintiff filed her initial Complaint on September 7, 2025. Defendant alleges any claims occurring before September 7, 2023 fall outside of the two-year statute of limitations.[2] Title IX does not have its own statute of limitations. *Doe v. Howe Military Sch.*, 227 F.3d 981, 987 (7th Cir. 2000). The Seventh Circuit stated in an Unpublished Opinion that the statute of limitations for Title IX claims is the same as that for personal injury cases in the state. *See Cetin v. Purdue Univ.*, 94 F.3d 647, 1996 WL 453229, at *2 (7th Cir. 1996) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) (holding that the state statute of limitations for personal injury claims applies to Title IX claims));

[2] Plaintiff initially argued the claims period began on September 11, 2023, but acknowledged in its Reply brief that any claims occurring September 7, 2023 are timely.

*Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 617-618 (8th Cir. 1995) (same). The Seventh Circuit later avoided directly addressing the limitations period for Title IX actions. *See Doe*, 227 F.3d at 989 ("The district court applied the same statute of limitations, and the same analysis, to the Does' Title IX claims. Because the plaintiffs do not challenge whether it was correct for the district court to borrow the state statute of limitations for the Title IX claims, we do not address whether that ruling was correct."). The Court presumes the statute of limitations for Title IX actions is the same as the forum state's limitations period for personal injury cases, which in Illinois is two years. *Monroe v. Columbia College Chicago*, 990 F.3d 1098, 1099 (7th Cir. 2021) (citing 735 ILCS 5/13-202).

Defendant asks the Court to disregard the following allegations: (1) February 24, 2022: Plaintiff notified the University that another female student used Plaintiff's work in a research paper without consent or attribution, but her complaints went unaddressed; (2) November 8 and 10, 2022: Plaintiff requested clarification regarding her qualified exam but was subsequently denied the opportunity and instead required to apologize for seeking clarification; (3) November 2022: Plaintiff objected to sex-based hostility and unequal process surrounding the qualified exam; and (4) April 13-14, 2023: Plaintiff spoke with the CS Director of Graduate Studies regarding her qualified exam and was told to apologize to the chair of her qualified exam committee, a young male professor, because he lost confidence as a result of her questions. (Doc. 15 at 6).

Plaintiff contends it is inappropriate to dismiss any potentially untimely claims at the pleading stage because Plaintiff is alleging a continuing course of discriminatory and retaliatory conduct culminating in timely adverse actions. The Court agrees. At this stage,

the Court accepts as true the allegations of Plaintiff's Amended Complaint. *See Hess v. Garcia*, 72 F.4th 753, 761-62 (7th Cir. 2023). Plaintiff is not yet required to explain how her allegations fall within a continuing violation theory and thus accrue at the time of the last injury. That is more appropriately addressed at summary judgment. *See e.g. Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("given the allegations of the complaint, we are convinced that the district court erred by dismissing the case based on the statute of limitations without giving the parties an opportunity for discovery into when a reasonable benefit fund should have known about its injuries from off-label marketing"). It is unusual to dismiss a complaint as untimely at the pleading stage, given that a complaint need not anticipate affirmative defenses such as the statute of limitations. *Id.* "Further, these defenses typically turn on facts not before the court at that stage in the proceedings." *Id.* (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). Based on the foregoing, Defendant's Motion to Dismiss is Denied, to the extent it seeks dismissal of certain allegations as untimely.

**C. Title IX Discrimination Claims in Count I**

Defendant contends the Court should dismiss Plaintiff's Title IX discrimination claims in Count I because the Title IX discrimination claim is not actionable under either a direct discrimination theory or a deliberate indifference theory. In response, Plaintiff alleges he is proceeding under a direct discrimination theory and Defendant's deliberate indifference attack is a "red herring" which does not defeat Count I as pled.

Title IX prohibits schools that receive federal funding from discriminating based on sex. *Arana v. Bd. of Regents of Univ. of Wis. Sys.*, 182 F.4th 670, 678 (7th Cir. 2026). "As Congress put it, 'No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Id.* (quoting 20 U.S.C. § 1681(a)). Title IX can be enforced by both federal agencies and victims of discrimination. *Id.* at 678.

"A Title IX discrimination claim requires a plaintiff allege (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Doe v. Columbia College Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). At the end of the day, the key question is whether "the alleged facts, if true, raise a plausible inference that the university discriminated . . . 'on the basis of sex.'" *Id.* at 854-55 (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)).

Defendant contends Plaintiff fails to plead she was excluded from participation in or denied the benefits of a university program or activity and that any such denial was on the basis of sex. Defendant argues Plaintiff's allegations are conclusory and do not support a reasonable inference that Plaintiff was discriminated against based on sex.

In response, Plaintiff contends she has plausibly alleged the denial of educational benefits and fair academic process, as follows: being punished for seeking clarification about qualifying-exam feedback and forced to apologize; denial of any meaningful

appeal process and a gatekeeping requirement tied to the subject of her complaints; funding ineligibility causing financial hardship despite a funding contract and available funds; probation conditions that were impossible to satisfy because registration opened after business hours on the deadline; and ultimate removal and registration prohibition. Plaintiff claims these are plausible deprivations of educational opportunities and not merely disagreements with academic judgment.

Plaintiff further asserts that, in addition to alleging disparate impact, Plaintiff also claims Defendant engaged in sex stereotyping and sex-based hostility in the administration of academic process and discipline. As an example, Plaintiff alleges that a white male student was permitted to ask questions about qualifying-exam feedback while Plaintiff was told she had no right to ask questions. Plaintiff also points to the statement of the Director of Graduate Studies, who told Plaintiff she should apologize because the chair was a "young male Assistant Professor" who "lost his confidence when a female student questioned his responses." Plaintiff further contends that University officials used their knowledge that Plaintiff's children were hospitalized as a basis for adverse treatment that was not applied to similarly situated non-mothers/non-caregiving students, including male students.

Defendant criticizes Plaintiff's allegations as "vague," "conclusory," and lacking specifics. However, this is the pleading stage and evidentiary support comes later. When considered together, Plaintiff's allegations raise a plausible inference she was denied an educational benefit on the basis of her sex. The fact that a plaintiff "may face problems of proof[] and the factfinder might not buy the inferences that he's selling" does not defeat

a claim at the pleading stage. *See Purdue Univ.*, 928 F.3d at 670. Because Plaintiff has alleged a plausible claim of Title IX direct discrimination in Count I, Defendant's Motion to Dismiss Count I is Denied.

**D. Title IX Retaliation Claims in Count II**

A plaintiff seeking to establish a Title IX retaliation claim must show: (1) she engaged in protected activity under Title IX; (2) the defendant took a "materially adverse action" against her; and (3) there was a but-for causation between the two. *Columbia College Chicago*, 933 F.3d at 857. Defendant contends Plaintiff's Title IX retaliation claims in Count II must be dismissed because they do not sufficiently allege sex-based retaliation. Even if Plaintiff could make this showing, Defendant argues she fails to allege a but-for causal connection between the protected activity and any adverse actions. In response, Plaintiff claims she adequately pled protected activity under Title IX and plausibly alleged materially adverse actions along with causation and a retaliatory motive.

Plaintiff points to the following protected acts: (A) in November 2022, after Plaintiff objected to sex-linked hostility and unequal process surrounding her exam, the Director of Graduate Studies stated that Plaintiff should apologize to the chair because he was a "young male Assistant Professor" who "lost his confidence when a female student questioned his responses on her exam;" (B) on September 7, 2023, Plaintiff's attorney contacted the University regarding Plaintiff's treatment, academic standing, and procedural rights; and (C) in April-May 2024, shortly before she was dropped from the program and prohibited from registration, Plaintiff reported to Graduate College and

departmental leadership the probation contradictions, funding denial, and bias concerns she documented. A fair reading of Plaintiff's Amended Complaint confirms she raised concerns about what she perceived as discrimination based on sex. Her complaints involved unequal treatment, unfair process, and "sex-based hostility" concerning the qualifying examination, sex-coded stereotyping, unequal process, and expressed those concerns through counsel and to Graduate College leadership. Plaintiff has sufficiently alleged that she engaged in protected activity.

Plaintiff contends she has adequately alleged materially adverse actions. A materially adverse action is one that would dissuade a reasonable individual from engaging in protected activity. *Burton v. Bd. of Reg. of Univ. of Wisc. Syst.*, 851 F.3d 690, 696 (7th Cir. 2017). It does not include "petty slights or minor annoyances." *Id.* Plaintiff cites the following adverse actions: (1) after counsel's contact, Plaintiff was told to pursue a third attempt or further review she would need a support letter from Professor Amato; (2) on November 9, 2023, the University rejected Plaintiff's appeal as untimely while Plaintiff claims it had blocked her earlier attempts to appeal; (3) Plaintiff alleges that qualifying exam registration was not open during the period necessary to meet the April 15, 2024 probation deadline, making compliance impossible; (4) despite reporting the timing contradiction, Plaintiff claims no corrective action was taken; and (5) on May 17, 2024, the University removed Plaintiff from the program and prohibited registration, citing her failure to satisfy the April 15 probation condition. Upon drawing all inferences in Plaintiff's favor, the Court concludes these materially adverse actions, whether

considered individually or particularly when considered together, might dissuade a reasonable person from pursuing a discrimination charge.

Plaintiff next contends she has plausibly pled causation and a retaliatory motive. Circumstantial evidence of causation includes: (1) suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of causation might be drawn; (2) evidence showing that the employer systematically treated other similarly situated employees better;" and (3) evidence that the asserted justification was pretextual. *Milligan v. Bd. of Trustees of Southern Ill. Univ.*, 686 F.3d 378, 388-89 (7th Cir. 2012).

At this stage, the Court concludes Plaintiff has adequately pled causation. Every materially adverse action alleged by Plaintiff postdates her counsel's September 7, 2023 communication with the University concerning Plaintiff's treatment, academic standing, and procedural rights. Plaintiff was placed on probation less than four months later and dropped from the program eight months later. In April 2024, Plaintiff was not allowed to register for the qualifying exam due to the University's actions. Less than one month before Plaintiff's dismissal, she documented the probation contradictions, funding denials and bias concerns to the Graduate College and departmental leadership. While Defendant contends non-retaliatory reasons such as Plaintiff's noncompliance explain Plaintiff's probation and eventual dismissal, those are factual determinations that are premature at this stage.

## III. CONCLUSION

Upon accepting as true the factual allegations of the Complaint and drawing all inferences in favor of Plaintiff, the Court concludes Plaintiff has alleged plausible discrimination and retaliation claims. Therefore, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 14) is DENIED. Defendant is directed to file an answer in accordance with the Federal Rules of Civil Procedure.

ENTER: September 30, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE